**UNITED STATES of America**

v.

**BROWNING–FERRIS INDUSTRIES OF GEORGIA, INC., et al., Defendants.**

**Crim. No. CR80–136A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 17, 1982.

---

Hugh Gibert, Atlanta, Ga., Joseph V. Giffin, Chicago, Ill., David Kairys, Philadelphia, Pa., C. David Vaughan, Penn Payne, Edward T.M. Garland, John R. Martin, J. Kevin Buster, Michael A. Doyle, Frank G. Smith, III, D.R. Cumming, Jr., Donald A. Winslow, Charles T. Lester, Jr., Charles M. Kidd, Atlanta, Ga., for defendants.

## ORDER OF THE COURT

FORRESTER, District Judge.

An indictment was brought in this district alleging that four corporations and four white males violated the Sherman Act, 15 U.S.C. § 1. The defendants have moved to dismiss the indictment because of alleged underrepresentation of black persons and females in the position of grand jury forepersons in the Northern District of Georgia. Subsidiary to their principal contention the defendants argue (1) that the position of grand jury foreperson is "constitutionally significant;" (2) that for the purposes of proving a *prima facie* case of discrimination, the selections made during the period 1970 to the date of the motion by all past and present judges of this court are the relevant data base and that an analysis of the data makes out a *prima facie* case of discrimination; (3) that the failure of the court to seek information about qualifications beyond employment, age and education is further evidence of an intent to discriminate; and (4) that an intent to discriminate is also evident in that the judges regularly passed over equally qualified black people and women to appoint white males. The motion was assigned to the undersigned, since Judge Ward recused himself and the undersigned has not yet empaneled a grand jury.

The same issue based upon essentially the same evidentiary record has been decided adversely to the movants by The Honorable William C. Keady in *United States v. Breland,* 522 F.Supp. 468 (N.D.Ga.1981), and by The Honorable Robert H. Hall in *United States v. Smith,* No. 78–99A (N.D.Ga.1981).

Those cases might have settled the matter, at least at this level, but for subsequent decisions of this circuit in *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir. 1982) (which suggested the need for further analysis of the government's rebuttal case in *Breland* ) and in *United States v. Holman,* 680 F.2d 1340, 1357 n. 13 (11th Cir. 1982) (which questioned the relevancy of "statistics dealing with selections by other judges during the past ten years."). In reviewing this case to determine the effect of those two cases, it became apparent that the issue at bar had not been clearly formulated.

The motion before the court was but one raised by the defendants in a wide-ranging attack on the jury selection practices of this district. Basically, the thrust of the challenge was that the defendants were deprived of their right to a grand jury drawn from a cross section of the community and one drawn randomly pursuant to the Jury Selection & Service Act, 28 U.S.C. § 1861 *et seq. See United States v. Northside Realty Assoc.,* 510 F.Supp. 668 (N.D.Ga.1981), *rev'd sub nom. United States v. Bearden,* 659 F.2d 590 (5th Cir.), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). Faithful to that broad institutional attack, the defendants here claimed to be entitled to a dismissal of the indictment because the judges of this court had systematically discriminated against black people and women in the appointment of grand jury forepersons since at least 1970. For the reasons given hereafter, this court finds that the defendants are not entitled to the relief which they seek.

## STATEMENT OF FACTS[1]

The grand jury which returned the indictment in this case was empaneled by The Honorable William C. O'Kelley. This chore befell him because he was the duty judge at the time (R 1331). Since he has been a judge, no other judge of the district has suggested to him who should be appointed

1. The court notes that the grand jury in question was empaneled by Judge William C. O'Kelley. The court is of the opinion that the selection decisions of other judges are irrelevant. Judge Keady's findings in *Breland, supra,* are exhaustive, and I would not disturb them.

as foreperson or deputy foreperson, nor has any judge suggested that a black person or a female not be appointed (R 1339; Vol. IV, p. 17).

Before Judge O'Kelley made the appointments of the officers of the grand jury, he reviewed the jury questionnaires and made some preliminary choices based on the information provided there. The race, sex, and age of each juror appeared thereon, as did educational attainment and occupation.

After this preliminary screening the judge had the juries called in his presence, and he endeavored to gauge the forcefulness of the respective jurors. He then charged the juries and appointed the officers (R 1333–34).

The judge had criteria for the position of foreperson. About making these selections Judge O'Kelley has said:

I generally am looking for a person who has some ability to be a manager and to preside over a grand jury and manage people. He has twenty-three grand jurors, including himself, to manage for eighteen months. He has witnesses to manage and control. He has the necessity to work with prosecuting attorneys in scheduling hearings. In my way of thinking he has some management responsibility.

I am generally looking for someone with a reasonable degree of education and some employment experience or other indication of an ability to perform a role of leadership and to manage a grand jury, manage people. (Vol. IV, p. 12; see also R 1334–36).

Education without evidence of leadership or management experience does not in the judge's view qualify one to be a grand jury foreperson. His selection as between otherwise qualified jurors is based on what the juror says or whether the juror seems forceful (R 1361–62). The procedure and the identical criteria are used in the selection of the deputy foreperson (R 1335). The race or sex of the juror has no effect on his selection, according to the judge (R 1337–38).

Judge O'Kelley has empaneled five grand juries since coming on the bench. Demographic data on the grand jury officers selected by him appears on the chart below as does similar data for black or female jurors which the defendants contend were qualified under Judge O'Kelley's criteria based on questionnaire responses.

| CLASSIFICATION | RACE/ SEX | AGE | OCCUPATION | EDUCATION |
|---|---|---|---|---|
| GRAND JURY EMPANELED 8/27/73 [2] | | | | |
| Foreperson John Langford | WM | 60–70 | Business | ? |
| Others Defendants Contend Were Qualified | | | | |
| James Brown | BM | 37 | Teacher | 4 years + high school |
| Mrs. W.E. Fulwood | WF | 45 | Elementary School Supervisor | 7 years + high school |
| GRAND JURY EMPANELED 11/23/76 | | | | |
| Foreperson Herbert Singer | WM | 46 | Grocery (Alterman Foods, Inc.) | 4 years + high school |
| Deputy Foreperson ? | WM | 58 | High School Principal | 5½ years + high school |

2. The questionnaires of the foreperson and the deputy have been lost. The data provided above is all that the parties have been able to reconstruct.

Others Defendants
Contend Were Qualified

| | | | | |
|---|---|---|---|---|
| Catherine Blalock | BF | 29 | Librarian [3] | 4 years + high school |

### GRAND JURY EMPANELED 1/18/76

| | | | | |
|---|---|---|---|---|
| Foreperson Posy L. Holcomb | WM | 62 | Self Employed with family in sales | 4 years + high school |
| Deputy Foreperson | WM | 53 | Manager, Atlanta Gas | Vocational |

Others Defendants
Contend Were Qualified

| | | | | |
|---|---|---|---|---|
| Beverly L. Center | WF | 50 | Office Manager (Georgia Piper) | 2 years + high school |
| Mrs. J.J. Gasser | WF | 45 | Secretary (Stevens Co., Inc.) | 2 years + high school |

### GRAND JURY EMPANELED 1/20/77

| | | | | |
|---|---|---|---|---|
| Foreperson George C. Ward | WM | 40 | Manager (Southwire) | 2 years + high school |
| Deputy Foreperson | WM | 56 | General Manager Medical Laboratory | 9 years + high school |

Others Defendants
Contend Were Qualified [4]

| | | | | |
|---|---|---|---|---|
| Miss Ruth L. Turner | WF | 64 | Medical Transcriptionist (Georgia Baptist Hospital) | 1 year + high school |

### GRAND JURY EMPANELED 2/13/79

| | | | | |
|---|---|---|---|---|
| Foreperson Leonard W. Bertelson | WM | 38 | Sales Manager [5] (Westwood Pharmaceutical) | 4 years + high school |
| Deputy Foreperson | WM | 58 | Bank Administrator (Trust Company of Georgia) | 1 year + high school |

---

3. This juror shows that she was employed by Mr. W.F. Stone in Unadilla, Georgia, which is not in this district. Her residence is shown as Greenville, Georgia, which is a considerable distance from Unadilla. An individual does not ordinarily employ a librarian.

4. Defendants also list a teacher on their chart, but no questionnaire for this person was submitted.

5. The foreperson's status as a manager is not on the questionnaire, but based on correspondence received prior to empanelment Judge O'Kelley believed him to be a manager.

**Others Defendants Contend Were Qualified**

| H.W. Drakeford | BM | 39 | Training Sergeant [6] Weapons Instructor (Federal Reserve Bank) | 2 years + high school |
| Mrs. W.L. Haus | WF | 62 | Teacher [7] | 5 years + high school |

At the hearing before Judge Keady, Judge O'Kelley elaborated on some of these selections and exclusions. As to Mr. Langford, he recalled that he was either in his 60's or 70's and had been in business in the Griffin area for a long time (R 1352). He listed school principals, individuals with extensive military experience, and office managers as people he thought would be accustomed to supervising others (R 1349). When asked about Mrs. Fulwood, he said he did not know what an elementary supervisor did but assumed she managed people (R 1355). He said that he considered that a schoolteacher might meet his criteria but considered it clearer that a principal would (R 1356). In this vein, he said that Mrs. Haus was probably qualified (R 1368). He thought that Drakeford's duties as a weapons instructor gave him a military type experience (R 1367).

After a review of the questionnaires and the testimony this court finds that Mrs. Blalock, Mrs. Gasser, and Miss Turner, whom defendants contend were qualified, would not, on the basis of known data, qualify as candidates for grand jury foreperson, based upon either Judge O'Kelley's criteria or any other criteria predicated upon a view that the duties of the office are constitutionally significant. See e.g., Perez-Hernandez, 672 F.2d at 1387. It is doubtful that Mr. Drakeford would qualify, but for the purposes of analysis he is counted as qualified. There is nothing in common experience which predicts with any degree of probability that a librarian, a secretary, or a transcriptionist would necessarily possess "people skills" or would have had leadership or management experience. (The court, of course, realizes that there are some who follow these callings who do possess these skills or who have had the requisite experiences.) Further, in the case of Mrs. Blalock it may be observed that it is not at all clear that she was at the time of selection occupied in her calling or in the district. See note 3, supra. The expected makeup of Mr. Drakesford's job as a weapons instructor for security guards does not support an inference that he possesses either "people skills" or a functional knowledge of management or presiding officer techniques. His job title suggests that he can and does explain the operation of a few assorted firearms, the principles of marksmanship and elementary safety rules for a firing range.

After excluding these jurors from the chart and after reviewing the age, occupation, and education of those remaining on the chart, the court concludes that the pool of jurors qualified for the position of foreperson included at least ten white males and no more than three females and two black people. (Neither party has suggested other white male jurors who might also have been qualified under any criteria.) Expressed in percentages, at least 66% of the people in the qualified pool were white males, no more than 20% were women and no more than 13% were black people. (A

6. In their brief of June 23, 1982 at page 28 defendants assert that this grand juror had a military background. This fact does not appear on the questionnaire and is unsupported in the record save for a characterization by defendants' counsel at the hearing that being a weapons instructor is military like. The deputy foreperson had 24 years of service in the Army.

7. Mrs. Haus listed her occupation as teacher but did not list the name or address of an employer.

shift of one would produce a 6½% variance.) As shown above, no black people or women were selected as foreperson or deputy foreperson.

The defendants have submitted the affidavits of James M. O'Reilly in support of a contention that a statistical analysis of the available data demonstrates a *prima facie* case of discrimination on the basis of race and sex in the selection of grand jury officers. Because of the smallness of the sample size, the probative value of this conclusion is substantially diminished. Further, the conclusion of the expert that a race/sex bias is demonstrated from the pattern of Judge O'Kelley's past selection is based upon an incorrect legal assumption. O'Reilly assumes that for measuring the disparity, the relevant population is either the race/sex makeup of the district or the race/sex composition of the "average" grand jury from which Judge O'Kelley made his selection. First, of course, the selections were not made from an "average" grand jury. There was considerable variance in the percentage of black people serving on individual panels. For example, there were no black people on the one empaneled on 1/20/77. Second, in a case where the issue is the presence of purposeful or intentional discrimination,[8] the relevant benchmark for computing disparities is the composition of the pool of those qualified to serve. Because of these considerations, the court does not find that an inference of bias is created by the statistical analysis or conclusions of Dr. O'Reilly.

Finally, the court finds that it was juror Thorn and not, as contended by the defendants, foreperson Bertelson who requested to be excused from sitting on the grand jury empaneled 2/13/79 (R 1381, 1382; Vol. IV, p. 16).

## CONCLUSIONS OF LAW

A ruling on the motion of defendants based upon the issue as they have literally formulated it would be a quick one based on no more persuasive authority than common sense. No defendants, much less these, are entitled to have an indictment against them dismissed upon a mere showing that in the past there has been systematic exclusion of black people or women from the position of grand jury foreperson on other grand juries. Such a rule would mean that an offending district could never indict anyone or that at least it could not indict anyone until it had empaneled and dismissed enough grand juries and, in the doing, selected enough black people and women as forepersons to bring the representation of black people and women into proportion.

In saying this, the court does not intend to be facetious but does intend to suggest the need for a closer analysis of what right of a defendant is being protected by *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981) (en banc) and its progeny.[9] The *Guice* court found that a defendant was entitled to a dismissal where it was shown that there was invidious discrimination in the selection of the foreperson of the grand jury. *Guice,* 661 F.2d at 499. It reached this result on the assumption that it was mandated by *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).

It must be kept in mind that *Rose* is an equal protection case involving black defendants, dealing only with the systematic exclusion of black people from service on grand juries. In the evil of racial discrimination, *Rose* and *Guice* have a common ancestor. *Rose*'s lineage is down through *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880); *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), and others which, as they relate to the integrity of the criminal justice system, are primarily concerned with assuring that juries and grand juries represent a cross section of the community.

The natural parent of the right recognized in *Guice* is *Peters v. Kiff,* 407 U.S.

8. *Hazelwood School District v. United States,* 433 U.S. 299, 308, 97 S.Ct. 2736, 2741–2742, 53 L.Ed.2d 768 (1977); *Rivera v. Wichita Falls,* 665 F.2d 531, 540 (former 5th Cir.1982).

9. It also points up the fact that the social cost of dismissal is not small. It may be no easy matter to obtain a subsequent grand jury which because of prior practice would be free of a serious subsequent attack.

493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). While, as noted in *United States v. Perez-Hernandez*, 672 F.2d 1380, 1385 (11th Cir. 1982), *Peters* alludes to the injury to the fairness of the criminal justice system which is caused where large identifiable segments of society, with their unique qualities of human nature and varieties of human experience, are removed from the grand jury room, *Peters* plainly recognizes a due process right in a white defendant to challenge an indictment returned by a grand jury from which black people were arbitrarily excluded.[10] The rationale of that decision is important here. Justice Marshall stated it thus:

> Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they create the risk of actual bias as well.

*Peters v. Kiff*, 407 U.S. at 502–03, 92 S.Ct. at 2168.

The origin of the right which defendants seek to avail themselves of and the rationale for its existence have implications for this case. Stated most directly, *Guice* recognizes the right in a defendant to challenge exclusions on the basis of race or gender or other impermissible classification. This right does not allow a challenge for a failure to include as do the sixth amendment cases dealing with the "cross section" issue. As said in *Perez-Hernandez* and reiterated in *United States v. Holman*, 680 F.2d at 1357 (11th Cir.1982), there is no way that one person can be a fair cross section of the community. Since the law does not require that the foreperson represent a cross section of the community, any comparison of foreperson selections vis-a-vis the makeup of the district are not called for in this case. As said the defendant may challenge the act of discrimination[11] by a selecting official. The official's purpose or practice may only be measured statistically by what he does with the alternatives presented. If he fails to appoint a black foreperson but that opportunity was not presented him, no inference of discrimination may be drawn.

*Perez-Hernandez* and *Holman* both recognize the right of the judicial officer to impose criteria if they are race and gender neutral, from which it follows that it is permissible to select forepersons from less than all of the grand jurors. Said another way, the composition of the grand jury is not the proper benchmark for statistical conclusions unless it is shown that all grand jurors meet the criteria. *Compare Hazelwood School District v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741–2742, 53 L.Ed.2d 768 (1977).

■ Finally, this court concludes that the right recognized in *Guice* is concerned with the lack of bias, actual or apparent, of the indicting body. It follows, therefore, that there must be evidence of discrimination in the selection of the grand jury which indicted the defendant. Past practice, to be sure, may be relevant but only to the extent that it tends to show that black people or women were arbitrarily excluded from the position of foreperson of the *indicting* grand jury. Since Judge O'Kelley selected the foreperson of the indicting grand jury here, and since no other judge influenced him in this selection, it is only his selections which are relevant for a rule of exclusion analysis. *United States v. Holman*, 680 F.2d at 1357 n. 13.[12]

---

10. This court recognizes that the bright line distinction between due process and equal protection rights of members of the excluded group and due process and fair cross section rights under the sixth amendment is not always apparent in the judicial literature. The court finds this distinction more in what was done than in what was said and, further, believes that it explains the apparent tension between *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and *Peters v. Kiff, supra*, which was noted by the Eleventh Circuit in *Holman*, 680 F.2d at 1356.

11. *See generally Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

12. The defendants contend most earnestly that for the purposes of a *prima facie* case, the appointments made by all judges of the district must be considered. They rely primarily upon *Ciudadanos Unidos v. Hidalgo County Grand Jury Commissioners*, 622 F.2d 807 (5th Cir. 1980). If the selections by other judges are to have relevancy it is only if they are made pursuant to custom or usage which might logically carry over and affect the selecting judge.

Judge O'Kelley is given discretion in the selection of a foreperson. Fed.R. Crim.P. 6(c). He has established criteria which guide him in his process—that the person selected should be a good manager of people who has the ability to preside over a meeting. He judges candidates primarily on the basis of occupation, taking into account age, education and an observable command presence. A judge may establish such criteria if they are positively related to the requirements of the position even if the criteria have a disproportionate impact on the chances for selection of black people or women. *Washington v. Davis, supra.* It seems clear in view of the duties of the foreperson as testified to by Judge O'Kelley and as recognized in *Perez-Hernandez,* 672 F.2d at 1387, that the criteria are reasonable. Accordingly, contrary to the contention of the defendants, for the purposes of a rule of exclusion analysis, the relevant population is the qualified grand jurors from which the selecting official had to choose.

As would be expected no single grand jury mirrors the composition of the pool. As noted above there was one grand jury drawn at random which contained no black people. The proportion of women varied widely. The same pattern is seen when considering only qualified jurors. Only in the empaneling of the grand juries of 8/27/73 and 2/13/79 did Judge O'Kelley have the opportunity to appoint a black person who, according to the only information available to him, met the criteria. Only on the panels of 8/27/73, 1/18/76, and 2/13/79 did he have a qualified woman. Because the selecting judge did not have the chance to appoint a black person or a female on every grand jury, no inference drawn from aggregated figures of the five grand juries would be rational.

The rule of exclusion to which the court has referred is a rule of evidentiary construction often used in jury discrimination cases which creates a rebuttable presumption of invidious discrimination upon proof that

> (1) The groups allegedly discriminated against are of a distinct class in society, and that
>
> (2) they are underrepresented in the position (juror, grand jury foreperson, etc.) *over a significant period of time,* and that
>
> (3) the selection procedure is not racially neutral or is susceptible of abuse.

*Bryant v. Wainwright,* 686 F.2d 1373 (11th Cir.1982).

Clearly the defendants have proved the first and since the process may be subject to abuse because of the breadth of the discretion arguably have proved the third. They have failed to prove the second point. The test samples of two grand juries containing qualified black people and three containing qualified women are not sufficiently large to allow a meaningful statistical analysis to convince a court that any disparity is not due to chance or inadvertence. *Mayor v. Educational League,* 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974); *Bryant v. Wainwright, supra.*

Even if it were assumed that the movants have made a *prima facie* showing, they would not be entitled to relief under the facts of this case. Judge O'Kelley's testimony, which the court finds credible is that he had no intent to discriminate. More importantly, however, his testimony regarding his selection criteria which are race/gender neutral is evidence of the existence of a legitimate, non-discriminatory explanation of any underrepresentation demonstrated statistically. This showing rebuts the *prima facie* case and requires the

There has never been any evidence in this case other than that Judge O'Kelley's appointments have been made free of the influence of other judges. Further, there is nothing about a court of life-tenured judges as a social institution which would lead one to suppose that its judges would find it in their interest to perpetuate the prejudices of a local constituency. Thus, there is no presumptive external pressure on the judge to discriminate. Therefore, the actions of other judges shed no light on any intent to discriminate harbored by Judge O'Kelley.

Also, unlike the situation with Judge Cisneros in *Ciudadanos Unidos,* 622 F.2d at 822, there is a record that Judge O'Kelley was not continuing the practices of his brethren.

movants to persuade the court that the explanation is unworthy of credence or that discriminatory intent more likely motivated the judge. *United States v. Perez-Hernandez,* 672 F.2d at 1388. *Compare Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–1095, 67 L.Ed.2d 207 (1981). *See also Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972); *Turner v. Fouche,* 396 U.S. 346, 361, 90 S.Ct. 532, 540, 24 L.Ed.2d 532 (1970).

Evidence that the judge selected a white male from among candidates who were essentially equally qualified does not ordinarily prove that the explanation given is a pretext, but evidence that he ignored more qualified minority or female candidates may. *See Burdine,* 450 U.S. at 258 *et seq.,* 101 S.Ct. at 1096. Because the questionnaires of the foreperson and deputy foreperson of the grand jury of 8/27/73 are unavailable, no conclusions may be drawn regarding the relative qualifications of the candidates. With the exception of the selection of a white male who was employed in sales work in a family business over a female office manager, the rest of the selections were of candidates better qualified under the criteria than the available alternative candidate.

Several observations can be made about the choice of the salesman over the office manager. First, on the basis of the information on the questionnaire the deputy foreperson, also a white male, was better qualified under the criteria than the foreperson because he was a manager with a large utility company. This would suggest that Judge O'Kelley knew something about the person he selected as foreperson which is not available to us now. It may be that he had additional historical facts or that this is an example of the final decision being swayed by observations made in the courtroom. The true explanation cannot be known but it does point up the weakness of the movants' case on the pretext question, for they have not obviated the reasonable possibility that the final choice between the possible choices was not influenced by perceptions of demeanor made in the courtroom.

Defendants contend that the failure of the court to seek out information unrelated to present employment status which might show the qualifications of additional black people or women is evidence of intent to discriminate. In support of that proposition they cite *Hill v. Texas,* 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942). In that case the jury commissioners made no effort to find out the identity of any black person who would be qualified for jury service. The court found this to be evidence of an intent to discriminate on racial grounds. In the case *sub judice* there were numerous black persons and women on the jury wheel. Each juror, irrespective of race or gender, was sent the same questionnaire and each had the same opportunity to put forward qualifications. As a consequence it cannot be said that there is any failure to inquire in this case.

As the selections made are largely consistent with the criteria and as there is no indirect evidence of gender based or racial animus, the defendants have failed to carry their burden even if the court assumes that a *prima facie* was made.

### CONCLUSION

For the reasons set out above, the motion to dismiss is DENIED.