**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mario PEREZ–HERNANDEZ, Defendant-Appellant.**

**No. 80–5165.**

United States Court of Appeals, Eleventh Circuit.

April 15, 1982.

James J. Hogan, Joseph Mincberg, Miami, Fla., John R. Martin, Atlanta, Ga., for defendant-appellant.

David Kairys, Philadelphia, Pa., Charles Stephen Ralston, NAACP Legal Defense and Educational Fund, Inc., New York City, for amici curiae.

Atlee W. Wampler, III, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Washington, D.C., for plaintiff-appellee.

Before MORGAN, VANCE and KRAV-ITCH, Circuit Judges.

PER CURIAM:

This appeal challenges the selection of federal grand jury foremen by district judges in the Southern District of Florida between 1974 and 1978. Appellant argues that his indictment should have been dismissed because women and blacks were unconstitutionally excluded from serving as foremen. His claim is based on two separate grounds. First, he contends that the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.*, require that grand jury foremen represent a fair cross section of the community, just as this representation is required in grand and petit jury venires. Second, he argues that the equal protection component of the Fifth Amendment due process clause entitles a criminal defendant to be tried on an indictment which is returned from a grand jury untainted by invidious discrimi-

nation, and that this right encompasses the selection of the grand jury foreman. We emphasize that we are not faced with a challenge to the composition of the grand jury venire, but only the selection of a foreman from that venire.

The relevant facts concerning appellant are brief. In January of 1979, a federal grand jury in Miami returned a three count indictment which charged appellant and two others with various drug related offenses. Appellant subsequently filed a pretrial motion to dismiss the indictment alleging race and sex discrimination in the selection of grand jury foremen. The government and appellant then entered into a stipulation that permitted the parties to adopt the record of *United States v. Jenison*, another pending case which raised the same pretrial issue. Appellant further agreed to be bound by the decision in *Jenison* for trial and appellate purposes of his case. On December 18, 1979, the *Jenison* motion to dismiss was denied, *United States v. Jenison*, 485 F.Supp. 655 (S.D.Fla.1979), and accordingly, appellant's motion was denied. Appellant then waived a jury trial and was convicted on a single count of heroin possession with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He now appeals the denial of his pretrial motion to dismiss the indictment.[1] Therefore, this appeal, for all practical purposes, is a review of the findings and conclusions of the trial court in *Jenison*.[2]

## I

### United States v. Jenison

The trial judge in *Jenison* made the following relevant findings of fact:

5. Blacks comprise sixteen and six tenths percent (16.6%) of the citizens of the Southern District of Florida aged 18 to 69.

6. Fifty grand juries were empaneled in the Southern District of Florida during the period from 1974 to 1978. One black was chosen to serve as grand jury foreperson in the Southern District of Florida from 1974 to 1978.

7. Women comprise fifty-three percent (53%) of the citizens of the Southern District of Florida aged 18 to 69.

8. Of the fifty grand juries empaneled in the Southern District of Florida during the period from 1974 to 1978, five women were selected to serve as grand jury forepersons.

\* \* \* \* \* \*

11. I find that, with the exception of Judge Roettger's practice of alternating between male and female forepersons, the foreperson selection practices of the judges who participated in the questioned empanelments are based on neutral selection criteria and are not prejudicially motivated. There was no purposeful discrimination of the selection of forepersons for the fifty grand juries empaneled in the Southern District from 1974 to 1978.

Record at 663–64. None of these findings are contested.[3] Both parties, however, are dissatisfied with the conclusions of law made in *Jenison*. The trial judge concluded that the fair cross section protections of the Sixth Amendment and the Jury Selection and Service Act of 1968 are not applicable to the office of grand jury foreman. *United States v. Jenison*, 485 F.Supp. at 661. He also found, however, that the equal protection component of the Fifth Amendment due process clause does apply to the selection of a federal grand jury foreman. He

---

1. The defendant in *Jenison* did not appeal the denial of his motion to dismiss.

2. Unless stated otherwise, any reference to a record in this opinion is a reference to the record of *Jenison* and not the record of appellant's case.

3. The motion to dismiss in *Jenison* originally included latins as a class discriminated against in the grand jury foreman selections. The trial judge found, however, that the statistics used to establish this part of the defendant's case were insufficient to permit the reliable calculation of disparity needed for a finding of discrimination. Record at 663. Since this element of the case was not essential for the success of either party, this finding has not been raised as an issue on appeal.

then concluded that the defendant established a prima facie case of discrimination under an equal protection analysis, but that the government sufficiently rebutted the presumption of discrimination. *Id.* at 665. Accordingly, he denied the motion to dismiss the indictment.

## II

### *Issues*

Appellant presents two issues in this appeal. First, he urges that the trial judge erred in finding "fair cross section" protections are inapplicable to the office of grand jury foreman. Second, he argues that, as a matter of law, the rebuttal testimony offered by the government was insufficient under Fifth Amendment standards to defeat a prima facie case of discrimination. The government also challenges two rulings of the trial court. It contends that the office of federal grand jury foreman is of no constitutional or statutory significance, and therefore, appellant cannot seek relief through the protections of the Fifth Amendment. In the alternative, it claims that the trial court erred in concluding that the defendant established a prima facie case of discrimination under the appropriate analysis. Of course, as a final alternative, it argues that the trial court should be affirmed on all issues. We note that these issues have never been raised before a circuit court in the context of a federal grand jury foreman, although several district courts have addressed similar claims.[4] After a careful review of appellant's constitutional rights and the record of this case, we affirm for the following reasons.

## III

### *Fair Cross Section Rights*

■ The Sixth Amendment to the Constitution grants every criminal defendant "the right to a speedy and public trial, by an impartial jury." The Supreme Court has interpreted this right to mean, among other things, that a petit jury venire must represent a fair cross section of its community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, extends this right to include the venire of a federal grand jury: "It is the policy of the United States that all litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." Appellant now urges us to extend the right one step further to the office of federal grand jury foreman.[5]

■ Few courts have addressed this question.[6] The Jury Selection and Service Act of 1968 does not refer to the office of grand jury foreman. Therefore, we believe the proper course of analysis is to examine the purpose of the fair cross section requirement and determine if it is applicable here. *Taylor v. Louisiana* offers a comprehensive, but relatively brief discussion of this purpose:

---

4. *See, e.g., United States v. Holman*, 510 F.Supp. 1175 (N.D.Fla.1981); *United States v. Manbeck*, 514 F.Supp. 141 (S.C.1981); *United States v. Cross*, 516 F.Supp. 700 (M.D.Ga. 1981); *United States v. Layton*, 519 F.Supp. 946 (N.D.Cal.1981); *United States v. Breland*, 522 F.Supp. 468 (N.D.Ga.1981).

5. If applicable, the fair cross section analysis employs a prima facie test which is virtually identical to the equal protection prima facie test for establishing a presumption of discrimination. *Compare Duren v. Missouri*, 439 U.S. at 364, 99 S.Ct. at 668, *with Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). There is a significant distinction, however, in the way that each prima facie case may be rebutted. For an equal pro-

tection claim, the presumption can be rebutted by proving an absence of discriminatory intent. *Castaneda v. Partida*, 430 U.S. at 497–98, 97 S.Ct. at 1281–82. In a fair cross section analysis, purposeful discrimination is irrelevant since the emphasis is purely on the structure of the jury venire; a prima facie case can be rebutted only by establishing a significant government interest which justifies the imbalance of classes. *Duren v. Missouri*, 439 U.S. at 367–68, 99 S.Ct. at 670.

6. With the exception of *United States v. Holman*, 510 F.Supp. 1175 (N.D.Fla.1981), every court to address this issue has rejected appellant's position. See *cases* cited note 4 *supra*.

The purpose of a jury is to guard against the exercise of arbitrary power—to make available the common sense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinct groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system.

419 U.S. at 530, 95 S.Ct. at 698 (citations omitted). Moreover, "[w]hen any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." *Peters v. Kiff*, 407 U.S. 493, 503, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972). We conclude, therefore, that the purpose of fair cross section protection is to provide a criminal defendant with grand and petit juries which are microcosms of the community. In this way, the Sixth Amendment right to an "impartial jury" is given full effect by insuring that distinct groups of the community are represented, but are not given the opportunity to dominate, or, in the alternative, denied the opportunity to participate, in a democratic system of justice. Accordingly, the fair cross section analysis is only applicable to groups, such as a grand or petit jury, which can represent society as a whole. One person alone cannot represent the divergent views, experience, and ideas of the distinct groups which form a community. Thus, a grand jury foreman is a member of the group which represents a cross section of his or her community, but he or she cannot be a fair cross section of that community.

Since we are not presented with a fair cross section challenge to the entire venire of the grand jury below, we must affirm the trial court's ruling on this issue.

## IV

### *Equal Protection*

■ Criminal defendants in state courts may challenge discriminatory selections of grand and petit juries through the equal protection clause of the Fourteenth Amendment. *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Criminal defendants in federal court are granted the same rights through an equal protection element of the Fifth Amendment due process clause: "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk*, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964). "If a classification is invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also invalid under the Due Process Clause of the Fifth Amendment." [7] *United States v. Gordon-Nikkar*, 518 F.2d 972 (5th Cir. 1975). Therefore, appellant's Fifth Amendment claim is governed by the principles and law which have developed under the familiar Fourteenth Amendment equal protection cases.

■ Before addressing the merits of appellant's case, we must first discuss a preliminary question of standing. Appellant is a male of hispanic descent who claims a denial of equal protection because blacks and women have been excluded from serving as grand jury foremen. Conflicting language in several recent Supreme Court cases has clouded his right to assert this claim. In *Peters v. Kiff*, 407 U.S. at 498, 92 S.Ct. at 2166, the opinion of the Court discussed this question in an equal protection context and concluded that "when a grand or petit jury has been selected on an imper-

---

7. In addition to the constitutional proscriptions against discrimination in the selection of grand jury members, federal law also proscribes the exclusion of distinct classes from grand and petit jury service. 28 U.S.C. § 1862; 18 U.S.C. § 243.

missible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim." Three years later, the Court reaffirmed this holding, although in the context of a Sixth Amendment claim. *Taylor v. Louisiana*, 419 U.S. at 526, 95 S.Ct. at 695. In 1977, however, the Court used significantly different language to address the same question: "Thus, in order to show that an equal protection violation has occurred in the context of grand jury selections, the defendant must show that the procedure employed resulted in substantial underrepresentation of *his race* or of the identifiable *group to which he belongs.*" *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (emphasis added). In *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the opinion of the Court at first seems to support the holding in *Peters v. Kiff*: "[T]he Court has recognized that a criminal defendant's right to equal protection of the laws has been denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded." *Rose v. Mitchell*, 443 U.S. at 556, 99 S.Ct. at 3000. Later in the opinion, however, the troublesome language from *Castaneda v. Partida* is quoted with approval.[8] *Id.* at 565, 99 S.Ct. at 3005. Despite this apparent conflict, we conclude that appellant is not precluded from bringing this claim even though he is not black or female. The holding in *Peters v. Kiff* is clear and unambiguous and has never been expressly overruled.[9] On the other hand, the disputed language in *Castaneda v. Partida* possibly refers only to the particular defendants involved in that case. Without more direction from the Supreme Court, we cannot hold otherwise.

 We must also address a second preliminary issue. The government argues that the position of federal grand jury foreman is constitutionally insignificant, and accordingly, discrimination in their selection does not require dismissal of subsequent indictments. In *Rose v. Mitchell*, the Supreme Court assumed without deciding that "discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire jury venire." 443 U.S. at 551 n. 4, 99 S.Ct. at 2998. That assumption has been accepted twice by judges of this court. *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir. 1981) (en banc); *Williams v. State of Mississippi*, 608 F.2d 1021 (5th Cir. 1979). "If convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because discrimination affected only the foreman." *Guice v. Fortenberry*, 661 F.2d at 499. We cannot now ignore these decisions and adopt appellee's argument.

 With these questions resolved, we return to a review of the holding below. The trial judge in *Jenison* found that a prima facie case of discrimination was established by the defendant. *United States v. Jenison*, 485 F.Supp. at 662. We agree. In order to support a prima facie case in the context of grand jury foremen, a defendant must establish three factors. First, the group allegedly discriminated against must be "one that is a recognizable, distinct class, singled out for different treatment under the laws." Second, the group must be substantially underrepresented in the office of

---

**8.** *Rose v. Mitchell* dealt with black defendants alleging discrimination against blacks in the Tennessee grand jury system. Therefore, the question of whether a white could assert the same claim was not directly addressed. Nonetheless, two district courts faced with this same issue have denied standing to defendants because of the language from *Castaneda v. Partida* quoted in *Rose v. Mitchell*. *See United States v. Cross*, 516 F.Supp. 700 (M.D.Ga. 1981); *United States v. Layton*, 519 F.Supp. 946 (N.D.Cal.1981).

**9.** This circuit allowed standing for a white male to challenge Florida's use of the death penalty as discriminatory against blacks. *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). We have used the more liberal grant of standing on other occasions as well. *See, e.g., Watson v. United States*, 484 F.2d 34 (5th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1944, 40 L.Ed.2d 291 (1974).

grand jury foreman over a significant period of time. Third, in order to complete the presumption of discrimination raised by the statistical evidence, the defendant must show that the selection procedure is not racially neutral or is susceptible to abuse as a tool of discrimination. *Castaneda v. Partida*, 430 U.S. at 494, 97 S.Ct. at 1280; *Rose v. Mitchell*, 443 U.S. at 565, 99 S.Ct. at 3005. Women and blacks have long been recognized as distinct classes subject to different treatment under the law. *See Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Taylor v. Louisiana*, 419 U.S. at 531, 95 S.Ct. at 698. It is unnecessary to fully reiterate the trial court's rationale for finding that the defendant established a substantial underrepresentation of blacks and women over a significant period of time. *See United States v. Jenison*, 485 F.Supp. at 662–64. Out of fifty grand jury foremen selected over a four year period, only 2% were black and 10% were women, while 16.6% of the voting age population were black and 53% were women. This disparity clearly satisfies the second part of the prima facie test. *See Castaneda v. Partida; Duren v. Missouri; Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Finally, the method used by the judges of the Southern District of Florida for selecting the foremen was susceptible to abuse. A judge personally selected a foreman after a grand jury was empaneled. Each judge was able to determine the sex and race of the grand jury members before he made a selection. *See Alexander v. Louisiana*, 405 U.S. at 630–32, 92 S.Ct. at 1225–26; *Castaneda v. Partida*, 430 U.S. at 495, 97 S.Ct. at 1280. Therefore, the defendant below established a prima facie case of discrimination, and the burden then shifted to the government to rebut that presumption. *Alexander v. Louisiana*, 405 U.S. at 632, 92 S.Ct. at 1226.

The final issue we must address is whether the government sufficiently rebutted the presumption of invidious discrimination. We conclude that it did. Specific criteria for what constitutes a rebuttal case have never been developed, however several guidelines are well known. The central focus of a rebuttal case must be on a "showing that racially neutral selection procedures have produced the disparity." *Alexander v. Louisiana*, 405 U.S. at 631–32, 92 S.Ct. at 1226. Moreover, "affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion." *Alexander v. Louisiana*, 405 U.S. at 632, 92 S.Ct. at 1226. In other words, a mere denial of discriminatory intent will not suffice. *Turner v. Fouche*, 396 U.S. at 361, 90 S.Ct. at 540. This is not to say, however, that testimony alone is per se insufficient. We believe instead that testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny. The trial judge below specifically acknowledged this duty and still found for the government. *United States v. Jenison*, 485 F.Supp. at 665. After a careful review of the record, we find that he reached a proper conclusion.

The government's rebuttal case below consisted entirely of testimony from eight district judges involved in the foreman selection process for the years in question. Each judge testified that he acted independently of the other judges in choosing a grand jury foreman, although each employed similar guidelines in making a selection. These guidelines generally consisted of four separate factors: (1) occupation and work history; (2) leadership and management experiences; (3) length of time in the community; and (4) attentiveness during the jury empanelment.[10] These factors directly relate to the ability to perform the administrative functions and duties of a grand jury foreman.[11] This is

---

10. We note that one judge inexplicably alternated between choosing a man and a woman, but he otherwise used this criteria for choosing which man or which woman.

11. Rule 6(c) of the Federal Rules of Criminal Procedure provides: "The foreman shall have power to administer oaths and affirmations and shall sign all indictments. He or another juror designated by him shall keep a record of the number of jurors concurring in the finding of

not then a case in which arbitrary and unrelated criteria operated to exclude distinct groups from a position. *Cf. Turner v. Fouche*, 396 U.S. at 361, 90 S.Ct. at 540 (where jury commissions disqualified blacks because they were not "upright"). We can think of no better criteria for determining which grand jury member is best able to serve as foreman. We recognize, however, that this criteria potentially can be used in a discriminatory manner. For this reason, the district judge alone is entrusted with the discretion to select a grand jury foreman. Fed.R.Crim.P. 6(c). Had the record in this case shown that these judges abused their discretion by selecting foremen without regard to the stated criteria or by excluding equally qualified blacks and women, then we would conclude that the presumption established by the prima facie test was not rebutted. This kind of evidence would establish that the gender and racially neutral selection procedures were not in fact applied in a neutral manner. But the record contains no such evidence. Accordingly, the trial court below properly denied appellant's motion to dismiss the indictment.

AFFIRMED.

MORGAN, Circuit Judge, specially concurring:

I concur, but write separately to express my opinion with regard to one issue. In *Rose v. Mitchell* the Supreme Court assumed without deciding that "discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire." 443 U.S. at 551 n. 4, 99 S.Ct. at 2997. This assumption was later accepted as law by the former Fifth Circuit: "If convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because

discrimination affected only the foreman." *Guice v. Fortenberry*, 661 F.2d at 499. This position has never been fully explained or examined, and for reasons set forth below I believe it is erroneously applied to this case.

In *Rose v. Mitchell* the Supreme Court addressed the selection of grand jury foremen in Tennessee state courts. The majority opinion discussed the long standing precedent of requiring the dismissal of a criminal indictment if discrimination has occurred in the selection of the grand jury. This body of law, however, was not developed to correct actual harm or prejudice to the indicted defendant. The fact that a defendant received a completely fair and impartial petit jury trial does not abate his right to indictment by a properly constituted grand jury.[1] *Rose v. Mitchell*, 443 U.S. at 551, 99 S.Ct. at 2997; *Alexander v. Louisiana*, 405 U.S. at 628, 92 S.Ct. at 1224. Moreover, it does not matter if the defendant is not a member of the class excluded from grand jury service. *Peters v. Kiff*, 407 U.S. at 498, at 92 S.Ct. 2166. Instead, the reason a defendant is allowed to contest discrimination in the selection of a grand jury is to protect the appearance of justice and the integrity of our judicial system. "Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process." *Rose v. Mitchell*, 443 U.S. at 555–56, 99 S.Ct. at 2999–3000. I zealously agree with this reasoning. Without the respect of society, our judicial system cannot function properly. Thus, the social costs associated with eliminating discrimination in the selection of a grand jury have been well justified. *See Rose v. Mitchell*, 443 U.S. at 557–58, 99 S.Ct. at 3000–01.

I believe, however, that this policy is necessarily limited in application. For example, if discrimination is found in the hiring of courtroom deputies, clerks, or the admin-

---

every indictment and shall file the record with the clerk of the court. . . ." In addition to these administrative tasks, the foreman often is required to keep absentee records and perform other similar duties. Record at 189, 192.

1. Indeed, the only reason the appellant in this case did not plead guilty at trial was to preserve this issue for appeal. Record of *United States v. Mario Perez-Hernandez*, Vol. 2 at 1–10.

istrative staff, then the integrity of the judicial system is still marred by inequality and hypocrisy, but certainly the appropriate remedy would not be the reversal of all criminal convictions before that court. Therefore, before a defendant may challenge his indictment because of discrimination in the judicial system, I believe that the discrimination must be related to a significant position or part in the administration of justice. Thus, discrimination in the selection of grand and petit juries would allow subsequently convicted defendants to appeal their convictions. I do not believe, however, that the position of federal grand jury foreman is significant or even remotely necessary to the proper administration of justice. Federal grand jury foremen perform menial, insignificant tasks. Their position does not give them the ability to independently affect the judicial system or the rights of a defendant; they have no more power than any other member of the grand jury panel. Appellant, of course, argues that the mere title gives a foreman the ability to unfairly persuade and influence the other grand jury members, but I cannot believe that federal grand jury members are innocent and naive lambs and the foreman their shepherd. Accordingly, I believe that discrimination in the selection of federal grand jury foremen, if proven, does not justify the quashing of subsequent indictments. I must wonder how society would view the integrity of our courts if unharmed criminal defendants are released because of discrimination which is unrelated to any significant part of the judicial system. The social costs are not justified in this instance.

My position is not inconsistent with *Rose v. Mitchell.* A grand jury foreman in the Tennessee state court system is chosen by a judge from the entire population for a two year term of office. He or she is then added to the randomly selected grand jury panel as the thirteenth member. Thus, discrimination in the selection of Tennessee grand jury foremen infiltrates discrimination into the selection of the entire grand jury panel. This is not the case in the federal system below where the grand jury panel was randomly and properly selected and only then a foreman was chosen from that group. Moreover, a Tennessee grand jury foreman is expected to assist the district attorney in investigating criminal activity and may order the issuance of subpoenas. *See Rose v. Mitchell,* 443 U.S. at 548 n. 2, 99 S.Ct. at 2996. The absence of the foreman's signature results in a fatally defective indictment. *Bird v. State,* 103 Tenn. 343, 52 S.W. 1076 (1899). In contrast, the only similarity between a Tennessee and a federal grand jury foreman is the name of the position. Rule 6(c) of the Federal Rules of Criminal Procedure provides that a foreman administers oaths, signs indictments, and keeps various clerical records. The absence of the foreman's signature does not affect the validity of the indictment. *Frisbie v. United States,* 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657 (1895). Thus, this is a case of apples and oranges. The position of grand jury foreman in the Tennessee system is an independently significant role in the administration of justice in that state, while the same position in the federal system is not. Therefore, the assumption made by the Court in *Rose v. Mitchell* was correct for the facts of that case and the same assumption may have been correct for a challenge of the Louisiana system in *Guice v. Fortenberry.* I believe, however, that the same assumption is not applicable to the federal system. I would affirm the trial court below for this reason, but I am otherwise in complete agreement with the decision in this appeal.