**UNITED STATES of America, Plaintiff,**

v.

**Jerome DALY, et al., Defendants.**

**Crim. No. 4–82–51–K.**

United States District Court,
N.D. Texas,
Fort Worth Division.

April 21, 1983.

Williard C. McBride, Joseph M. Jones, Linda Eads, James P. Springer, Stanley S. Harris, U.S. Atty., U.S. Dept. of Justice, Criminal Sec., Tax Division, Washington, D.C., for plaintiff.

Evelyn Leopold, Richard Bruse, Fort Worth, Tex., Jerry D. Patchen, Houston, Tex., William M. Ravkind, Dallas, Tex., Wm. M. Blair, Fort Worth, Tex., Michael G. Parham, Jasper, Ga., Douglas Wright, Fort Worth, Tex., for defendants.

### DECISION AND ORDER

BELEW, District Judge.

This matter came before the Court on defendant Klir's motion (in which all defendants join) to dismiss the indictment based on alleged statutory and constitutional errors in the jury selection process in the Dallas and Fort Worth Divisions of this District. For reasons stated below this Court finds no merit in this challenge and herein denies the motion to dismiss.

## I. INTRODUCTION

The defendant initiated his challenge here in a pretrial motion to dismiss (Def. Motion) supported by a memorandum of points and authorities (Def. Memo.). In its response (Gov. Response) the Government opposed the defendant's motion in all respects, and this Court held on evidentiary hearing on the matter on September 29 (I–Tr. 1–65), 30 (II–Tr. 67–185), and October 1 (III–Tr. 187–339), 1982. During this hearing thirty-one exhibits (Exs. 1–26, and 27–32) were jointly offered (and admitted by the Court) by the parties in support of their respective positions. (III–Tr. 225.) Also, throughout the hearing the parties made certain oral stipulations on the record. (I–Tr. 13; II–Tr. 112–115.) At the close of the hearing the defendant expressed his desire to submit a final brief on the matter (III–Tr. 332–337) but has failed to do so up to this point in time. Also see Def. Memo. 1. Consequently, the aforesaid pleadings, transcripts, exhibits, and stipulations comprise the record for this matter. The defendant challenges two aspects of the selection system.

First, he asserts that the grand and petit juries for the two divisions are not drawn randomly from a fair cross section of the community. He claims various reasons for this alleged violation: (1) the fact that the voters' registration lists were the sole source for the generation of the jury wheel; (2) the Court's alleged failure to follow up unreturned questionnaires, generated from the so-called "Master Wheel" to build the so-called "Qualified Wheel";[1] (3) the Court's alleged liberal excuse and postponement practices; (4) the so-called "child-care excuse"; and (5) the alleged disqualification of potential jurors who move within the district from one division to another. The defendant claims that the alleged failure to randomly draw the jurors from a fair cross-section of the community has abridged his right to be indicted and tried by such a jury, as well as a given potential juror's right to serve, in violation of the Fifth and Sixth Amendments of the Constitution, and 28 U.S.C., Sections 1861 et seq.

Second, he asserts that the judicial appointment of forepersons (and deputies) violated the guarantee of equal protection under the Fifth Amendment based on the fact that a higher percentage of white males were appointed to the positions than in the general population.

Each of these two challenges is treated in turn, along with the Court's respective findings of fact and conclusions by law.

## II. THE CHALLENGE TO THE RANDOM SELECTION OF JURY PANELS FROM A FAIR CROSS-SECTION OF THE COMMUNITY

The defendant's challenge that the grand and petit juries in the two divisions were not randomly drawn from a fair cross-section of the community is based on alleged violations of the Fifth and Sixth Amendments of the Constitution, as well the federal statute governing jury selection (28 U.S.C., 1861 et seq.).

### A.  The Constitutional Challenge

■  To support his constitutional claims, the defendant cites *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (Fifth Amendment) and *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) (Sixth Amendment) as the "leading cases" and concedes that *United States v. Maskeny*, 609 F.2d 183 (5th Cir.1980) cert. denied, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 "is the leading Fifth Circuit case." (Def. memo. 1). Therefore, under these authorities the defendant had to show the following to perfect his constitutional challenge: (1) the allegedly underrepresented segments (here, "non-white" and the "mobile people") are "distinct" or "cognizable" groups in the community; (2) the representation of these groups in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the

---

1. A brief flow-chart sketch of the entire system appears in Figure 1 of Exhibit 25 (p. 3).

community; and (3) this alleged underrepresentation is due to a systematic exclusion of the groups in the jury-selection process. For a description of the defendant's burden here see *Duren v. Missouri, supra,* 439 U.S. at 364, 99 S.Ct. at 668. See also n. 2, *infra.* In this Court's view the defendant has failed in all these respects.

■ First, as the defendant concedes (Def. Memo. 2) (citing *Ciudadanos Unidos de San Juan v. Hidalgo Cty., Etc.,* 622 F.2d 807 (5th Cir.1980)), the issue of cognizability is a question of fact.[2] This Court finds that neither group advanced by the defendant is a cognizable, distinct group in the community based on the record here. Indeed, the "non-white" segment is by its very definition in this case an open-ended category.[3] Of course, the main premise of defendant's claim here is that this group comprises distinct subgroups, such as Blacks, Hispanics, Orientals, etc., all of which share the same discriminatory existence respecting jury selection. But this premise never rose from the level of assumption to that of proven fact during the hearing, and even defendant's expert could not tell from the evidence which of the above-mentioned subgroups were underrepresented, let alone whether all of them together formed a distinct group for the purposes of jury selection. (II–Tv. 153, 162, 166.)[4] Furthermore, the Bureau of the Census, which all of defendant's experts accepted as an authority, clearly prohibits the designation "non-white" in the presentation of data in any "publication of compliance or statistical data * * * ". (Ex. 16, pp. 282–283.) The defendant's expert, when confronted with this point on cross-examination, stated that the directive in question was simply applicable to federal reporting statistics rather than the situation here. (II–Tr. 149 *et seq.* ). Yet, this expert appeared to be evading the thrust of the Government's examination, i.e., the purpose and wisdom of the rule in generally dealing with statistical data which interrelates the concepts of ethnicity (Hispanic, Non-Hispanic) and race (White, Black, Oriental, and Indian). There was ample testimony from various of the defendant's experts (e.g. II–Tr. 135) regarding problems encountered by the Census Bureau in the 1970 Census, when data regarding race and ethnicity was collected on a combined format (See Ex. 16, pp. 282–283) (which is virtually identical to the case here given the structure of the jury questionnaire (Ex.

2. This Court realizes that the challenge in *Ciudadanos* was under the Fifth Amendment (denial of equal protection) and did not involve a Sixth Amendment challenge. Here, the defendant makes both of these challenges, and in *United States v. Maskeny,* 609 F.2d 183, 190 (5th Cir.1980), the Fifth Circuit declared that the effective difference between the two was the claimant's burden as to the third element. Thus, under the Fifth Amendment a claimant must show "purposeful discrimination" (*id.* ), whereas under the Sixth Amendment he need only show the "systematic exclusion" of the identifiable group (*Duren v. Missouri,* 439 U.S. 357, 364, 367–368, 99 S.Ct. 664, 668, 670, 58 L.Ed.2d 579 (1979)). However, it appears that the legal burden of a claimant regarding proof that a certain group is "cognizable" or "identifiable" is the same whether he proceeds under a Sixth Amendment theory (*Duren v. Missouri, supra.* ) or a Fifth Amendment theory (*Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)).

For the purposes of the analysis of this part of defendant's claim we only hold the defendant to the lesser burden of proof under a Sixth Amendment claim. Of course, the defendant's challenge to the Court's selection of grand jury forepersons/deputies (discussed *infra.* ) is based solely on an equal protection theory under the Fifth Amendment, and hence there he must show "purposeful discrimination."

3. This "non-white" category includes all races except the white race plus "Hispanics," which is not a racial category but rather has "ethnic" significance. See the discussion *infra.* The categories named on the questionnaires sent to prospective jurors are: (1) White; (2) Black; (3) American Indian; (4) Oriental; and (5) Other. (Ex. 3.)

4. Indeed, this expert witness stated that, unless Blacks and Hispanics were a "coherent" group, the categorical breakdown "white" vs. "non-white" was "bogus." (II–Tr. 153.) As the Court states immediately *infra,* the defendant failed to show that Blacks and Hispanics (or any of the other subgroups included) were sufficiently similar to be placed in the same category which could be deemed a distinct group for the defendant's challenge.

3) (See n. 3, *supra* )).[5] Put simply, Hispanics may be of any race and thus "figure as components of the white and black populations" in the community (Ex. 16, p. 209) and thus the defendant has "mixed apples with oranges".[6] Since defendant's target category of discrimination (i.e. "non-white") indiscriminately mixes the two different concepts of race and ethnicity, this Court finds that the category "non-white" is not a distinct and cognizable group in the community.

The other segment of the community, which defendant claims to be a cognizable group (and victim of systematic exclusion from the venire), is "a mobile class of people with identifiable characteristics, including youth and other new residents * * *." (Def. Motion, para. 6.) In substance this is a challenge to the constitutionality of the one-year residency requirement for jury service under 28 U.S.C., Section 1865, which has clearly been rejected in the Fifth Circuit. *United States v. Maskeny, supra* at 192.

But even if we assume the segment "non-white" is an identifiable group in the community, the defendant has still not shown that this group is not fairly and reasonably represented in the venire. For example, he failed to demonstrate that any underrepresentation here did not result from the statutory requirements of juror qualification. See 28 U.S.C. 1865. Thus, Mr. Friedman, the defendant's primary witness (who conducted the study of the jury selection in the two divisions) stated he failed to determine what percentage of the general population: (1) were versed in the English language; (2) were residents for one year in the district; or (3) had charges pending against them, etc. (III–Tr. 315.) Fifth Circuit authority clearly requires greater absolute disparities when general population statistics are utilized rather than statistics concerning those in the general population actually qualified or eligible to serve as jurors. *Foster v. Sparks*, 506 F.2d 805, 833 (5th Cir.1975); *United States v. Butera*, 420 F.2d 564, 569–570, n. 13 (1st Cir.1970). Here the defendant's expert studied venires in the two divisions for the years 1968, 1972, 1977, and 1981, and estimated absolute disparities for the "non-white" segment ranging from 6.20% to 10.81%, and in one sole instance 11.8%. (Ex. 25), evidence which this Circuit has consistently rejected as a *prima facie* showing of discrimination, *Thompson v. Sheppard* 490 F.2d 830, 832–33 (1974); accord *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir.1980).

▆ Lastly, the defendant has failed to establish how the system is susceptible to discriminatory practices. His main claim is that voters' registration lists are the sole source from which the jury wheels are drawn. The whole thrust of his argument (and evidence at the hearing) is that "non-whites" and the "mobile people" in the community fail to register according to their representation in the community. Yet, the Fifth Circuit has consistently held that such a failure alone is not a basis for requiring the supplementation of the voter registration lists. *United States v. Wesevich*, 666 F.2d 984, 990 (5th Cir.1982); *United States v. Arlt*, 567 F.2d 1295, 1297 (5th Cir.1978); *United States v. Goff*, 509 F.2d 825 (5th Cir.1975), cert. denied, 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83. Indeed, for the defendant to succeed here he would have to show that these allegedly cognizable groups were systematically excluded from voter registration, and this he has failed to do. One example of defendant's tenuous efforts to challenge the registration lists was his examination of Dr. Geisel, an expert in the demography of the Dallas/Ft. Worth area, eliciting testimony that the one-year residency requirement for voter registration tended to exclude the "mobile people". (III–Tr. 194–196, 198–199.) The frivolous nature of this claim is

---

5. These problems were at least partially solved in the 1980 census, where a separate reporting format was used, and "ethnicity" and "race" were broken down in different questions.

6. The point was also brought on cross-examination of Dr. Geisel, another of defendant's expert witnesses. (III–Tr. 219–223.)

demonstrated by the fact that these "mobile people" would also be disqualified for jury service for the same reason. See 28 U.S.C., Section 1865. Furthermore, this Court can give little credibility to an expert's testimony regarding whether (and how) voter registration lists should be supplemented, when that expert is clearly unaware of any of the requirements for federal jury service. (III–Tr. 209.)[7] Thus this Court finds that the defendant has failed to show that sole use of the voter registration lists makes the jury selection system in the two divisions susceptible to discriminatory abuse. See *Castaneda v. Partida, supra* 430 U.S. at 493–494, 97 S.Ct. at 1279–80; *United States v. Lopez,* 588 F.2d 450, 451–452 (5th Cir.1979); *United States v. Arlt,* 567 F.2d 1295, 1297 (5th Cir.1978).[8]

### B. The Statutory Challenges

■ The defendant makes miscellaneous statutory claims. First, he alleges that the randomness required under the statute (28 U.S.C. 1861 et seq.) has not been observed here. In support of his claim he alleges (1) "the returned questionnaires were not sufficiently inclusive to assure citizens the opportunity to serve"; and (2) the Court failed to follow up questionnaires, and excused and postponed potential jurors improperly. As this Court stated above, the factual premises of the defendant's claim are only partially correct: There was only a failure to follow up on unreturned questionnaires for a period in the Dallas Division. (II–Tr. 112–115.) Furthermore, the excuse and postponement practices of this Court are not such that "[i]n essence, this district has a system of voluntary jury service." See affidavit of Faye Ray attached to Gov. Response. Since the de-

fendant failed to adduce evidence that the failure to follow up questionnaires in the Dallas Division had any impact on the randomness of jury selection this Court finds that there was no "substantial violation" of the statute in this regard, *United States v. Maskeny, supra* at 191–194, and finds no conceivable violation of the statute regarding the excuse and postponement practices of the Court. See affidavit of Faye Ray, *supra.* At any rate, the record here does not involve the extreme circumstances set forth in the cases cited by defendant, i.e. *United States v. Okiyama,* 521 F.2d 601 (9th Cir.1975) (veniremen being qualified who cannot speak English) or *United States v. Kennedy,* 548 F.2d 608 (5th Cir. 1977), cert. denied, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977) (emergency drafting of jurors for new case who just completed prior service).

■ Next the defendant claims the so-called "childcare excuse" violated the Constitution and the statute by denying him the right that the jury panels be drafted from a fair cross-section of the community. As the Government observed in its response, the defendant's claim is without merit since the provision at issue was adopted by the Judicial Conference on September 25, 1980, as one of five exclusive categories for excuse from jury service. See the Conference's report attached to Gov. Response. Furthermore, this provision (or a very similar one) has been upheld as non-violative of the Constitution and the statute in *United States v. Goodlow,* 597 F.2d 159 (9th Cir.1979), cert. denied, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979); *United States v. Manbeck,* 514 F.Supp. 141 (D.S.C.1981); *United States v. Armsbury,* 408 F.Supp. 1130 (D.Or.1976).

---

**7.** Dr. Geisel testified that many of the individuals excluded from the registration lists were Spanish-speaking immigrants, and he admitted ignorance of the Act's requirements for knowledge of the English language, as well as the rest of its requirements.

**8.** Defendant also asserts that the divisions failed to follow up on unreturned questionnaires, thereby affecting the randomness of the selection system. Yet, the premise of the defendant's

claim is only partially correct since questionnaires were in fact followed up at all times in the Fort Worth Division, but not at all times in the Dallas Division. (II–Tr. 113–115.) Furthermore, even assuming arguendo the defendant's version of the facts, he has not shown that the alleged failure to follow up makes the selection system susceptible to discriminatory abuse. *Castaneda v. Partida,* 430 U.S. 482, 493–494, 97 S.Ct. 1272, 1279–80, 51 L.Ed.2d 498 (1977).

The cases cited by the defendant held that provision allowing *any female* to excuse herself from service *without advancing any reason* violate requirements of the Constitution and the statute. However, here the provision is quite different. It provides that:

> Persons having active care and custody of a child or children under 10 years of age whose health and/or safety would jeopardized by their absence for jury service; or a person who is essential to the care of aged or infirm persons.

This provision clearly sets forth a "reasonable exemption" as described by the Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 370, 99 S.Ct. 664, 671, 58 L.Ed.2d 579 (1979).

█ Next the defendant claims that the use of only voter registration lists from which are drawn the master jury wheels violates the requirements under the Constitution and the statute that the jury represent a fair cross-section of the community. Yet, so long as the divisions call for a *random* selection of grand jurors from the voter registration lists, there is no violation. *United States v. Butler,* 611 F.2d 1066 (5th Cir.1980), rehearing denied, 615 F.2d 685 (5th Cir.1980), cert. denied, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1981). Also see the discussion *supra (The Constitutional Challenge),* regarding the use of voter registration lists as a sole source in the jury selective process.

█ Finally, the defendant alleges that the residency requirements of the divisions violate the Constitution and the statute. Since no potential jurors are actually disqualified (they simply have to await random selection from the voters' lists in the new division) based on their relocation to another division (or within a given division), we believe the defendant's claim is frivolous. See affidavit of Faye Ray, *supra.*

█ Basically, a fair reading of Fifth Circuit authorities, especially the recent decision in *Maskeny* (which defendant concedes is the leading circuit case), leads this Court to the conclusion that any failure to follow the statute must be "substantial," a finding which the record here clearly does not warrant. 609 F.2d at 191–94.

## III. THE ALLEGED DENIAL OF EQUAL PROTECTION IN THE SELECTION OF GRAND JURY FOREPERSONS AND DEPUTIES

█ The defendant asserts that the historical process in the two divisions of selecting grand jury forepersons is violative of the Fifth Amendment of the Constitution. To support his claim he cites *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981) (en banc); and *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982).[9] Regarding the threshold issue as to whether the positions of grand jury foreperson/deputy foreperson involve duties which are ministerial and not of constitutional significance, this Court will follow the very recent precedent in this District established by the decision of the Honorable Robert W. Porter in *United States v. Cronn,* 559 F.Supp. 124 (No. CR 3–82–071, filed August 4, 1982). Of course, that decision rejected the reasoning of the Eleventh Circuit's decision in *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982), where it was held that such positions have constitutional significance upon which an equal protection challenge under the Fifth Amendment may rest. This Court is not bound by that Circuit's

**9.** In his pleadings the defendant simply claimed that there had been an overrepresentation of "white males" in these positions and did not specify there which identifiable group was underrepresented. However, the defendant's cross-examination of the Honorable Eldon B. Mahon (whose testimony the parties stipulated to be representative of the District's practices (I–Tr. 13)) was clearly directed at proving that Judge Mahon had been purposefully discriminatory towards the female class in his selection of grand jury forepersons/deputy forepersons. (III–Tr. 226–259, esp. 227–228, 251.) To the extent that the defendant's claim here is directed at the so-called "non-white" class (see III–Tr. 251), this Court rejects it on the basis that this segment is not an identifiable group. See the discussion *supra* regarding defendant's constitutional claim regarding the selection of jury panels.

decision and finds its reasoning unpersuasive especially in view of this Court's recital of the foreperson's duties (I–Tr. 109–111) and Judge Mahon's testimony on the matter (III–Tr. 226–267 esp. 259–264). Thus on the record here, this Court finds that the duties of the grand jury foreperson/deputy foreperson are sufficiently of a ministerial nature that no equal protection claim is applicable.

But even if this Court were to follow the decision in *Perez-Hernandez*, regarding the constitutional significance of the position at issue here, the Government clearly rebutted whatever *prima facie* case of discrimination was raised by the defendant (as was the final outcome of the claim raised in *Perez-Hernandez*). See 672 F.2d at 1387–1388. Clearly, Judge Mahon's testimony, which the parties stipulated to be representative of the District practices (I–Tr. 13), established that solely sexually neutral criteria were used in the selection process of grand jury forepersons/deputy forepersons, and rebutted any inference of purposeful discrimination. (II–Tr. 226–267, esp. 259–264.) Thus, even if *Perez-Herandez*, were the applicable law in this Circuit the defendant's claim here has no merit.

## IV. CONCLUSION

The defendant's motion to dismiss the indictment based on alleged improper jury selection is hereby DENIED in its entirety based on the foregoing reasons.

IT IS SO ORDERED.