UNITED STATES of America, Plaintiff-Appellee,

v.

Donald Lorrin CRONN, Defendant-Appellant.

No. 82–1614.

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1983.

Rehearing and Rehearing En Banc Denied Oct. 27, 1983.

---

Arch C. McColl, III, David W. Coody, Dallas, Tex., for defendant-appellant.

Michael P. Heiskell, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

Today's issue of significance is whether a criminal conviction in an otherwise fair trial [1] must be reversed on a ground far removed from guilt or innocence of the accused.* Defendant Cronn, an Anglo male, asserts that his conviction of mail fraud and related offenses must be overturned because females and members of racial minorities may have been underrepresented in tenure as grand jury foremen at the time of his indictment. This circumstance, which, in the posture of the appeal, we must assume existed, is said to have denied him his Fifth Amendment right to equal protection of the laws. No contention is made that the grand jury itself, from which the court selected a foreman, was improperly constituted.

The district court, 559 F.Supp. 124, denied Cronn's motion for access to grand jury selection records, thus aborting his attempt to establish underrepresentation. Although the court concluded that despite his non-minority status Cronn possesses standing to

---

**1.** We so conclude as to Cronn's other points for reversal, discussed below with the brevity that they merit.

\* In accordance with Court policy, this opinion, being one which initiates a conflict with the rule declared in another circuit, was circulated before release to the entire Court, and rehearing en banc was not voted by a majority of the judges in active service.

raise the complaint, it determined as well that "the position of a federal grand jury foreman is not constitutionally significant." In so doing, it distinguished our decision in *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981) (en banc), and that of the Supreme Court in *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), both concerned with foremen of state grand juries, on two grounds: that the federal foreman was selected from among the members of the already-constituted (and properly so) grand jury, rather than added to them as in *Rose* and *Guice*; and that his powers, unlike the greater ones of the state foremen, were merely ministerial. We affirm, but on a narrow and basic ground— one that allows us to leave decision of these broad and knotty issues for another day.[2]

From the presentation of the initial motion to the submission of the briefs and argument of the case before us, plaintiff has specifically denominated his claim as one arising under "the equal protection component of the Fifth Amendment to the United States Constitution." (App.Br. p. 7). In none of his briefs to this court is any other due process contention made. Nor was any made in his district court filings or discussed in the opinion of that court. Indeed, the only time the words "due process" appear in any brief filed with us by Cronn is in an observation that, as in the case of a state defendant relying on the explicit Equal Protection Clause of the Fourteenth Amendment, "[t]his equal protection attack is also available to federal defendants through the Due Process Clause of the Fifth Amendment." (App.Br. p. 7).

It is therefore plain that Cronn has elected, for whatever reasons, to advance no broader or additional due process challenge and to rely solely on the equal protection component. Based on the analysis below

we determine that, for purposes of standing, challenges based on equal protection and due process analyses are distinct. Because Cronn has raised only an equal protection challenge, it is in this context alone that we review his standing. We cannot and will not consider a contention presented neither to the trial court nor to us.[3]

The district court, however, failed to distinguish between due process and equal protection challenges to grand jury composition, and held that this plaintiff had standing. In so doing, the court relied upon a recent case in the Eleventh Circuit. *United States v. Perez-Hernandez*, 672 F.2d 1380. We set out the reasoning of *Perez* on this issue in full:

Before addressing the merits of appellant's case, we must first discuss a preliminary question of standing. Appellant is a male of hispanic descent who claims a denial of equal protection because blacks and women have been excluded from serving as grand jury foremen. Conflicting language in several recent Supreme Court cases has clouded his right to assert this claim. In *Peters v. Kiff*, 407 U.S. [493] at 498, 92 S.Ct. [2163] at 2166 [33 L.Ed.2d 83], the opinion of the Court discussed this question in an equal protection context and concluded that "when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim." Three years later, the Court reaffirmed this holding, although in the context of a Sixth Amendment claim. *Taylor v. Louisiana*, 419 U.S. [522] at 526, 95 S.Ct. [692] at 695 [42 L.Ed.2d 690]. In 1977, however, the Court used significantly different language to address the same question: "Thus, in order to show that an equal protection violation

---

**2.** A conflict already exists within the circuits about whether the position of federal foreman is constitutionally significant. *Compare United States v. Hobby*, 702 F.2d 466 (4th Cir.1983) (not so), *with United States v. Perez-Hernandez*, 672 F.2d 1380 (11th Cir.1982), and *United States v. Cross*, 708 F.2d 631 (11th Cir.1983) (significant).

**3.** We note especially that we do not deal here with a motion for more definite statement, with an issue tried as though pled, or with any other technical matter of pleading. Instead, we view a potential contention that was never advanced *at all*, neither "pled" nor "tried," either here or to the district court.

has occurred in the context of grand jury selections, the defendant must show that the procedure employed resulted in substantial underrepresentation of *his race* or of the identifiable *group to which he belongs."* *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (emphasis added). In *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the opinion of the Court at first seems to support the holding in *Peters v. Kiff:* "[T]he Court has recognized that a criminal defendant's right to equal protection of the laws has been denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded." *Rose v. Mitchell,* 443 U.S. at 556, 99 S.Ct. at 3000. Later in the opinion, however, the troublesome language from *Castaneda v. Partida* is quoted with approval. *Id.* [430 U.S.] at 565, 99 S.Ct. at 3005. Despite this apparent conflict, we conclude that appellant is not precluded from bringing this claim even though he is not black or female. The holding in *Peters v. Kiff* is clear and unambiguous and has never been expressly overruled. On the other hand, the disputed language in *Castaneda v. Partida* possibly refers only to the particular defendants involved

in that case. Without more direction from the Supreme Court, we cannot hold otherwise.

672 F.2d at 1385–86 (footnotes omitted). Despite our customary deference to our sister circuit, we are unable to concur in this well-stated reasoning.

At the outset we conclude that *Peters v. Kiff,* insofar as it discusses the right of a white defendant not to have black citizens systematically excluded from his grand or petit jury, does not rest on constitutional equal protection grounds.[4] Since it does not, but rather on due process and in some instances Sixth Amendment ones, we do not see that "apparent conflict" which concerned the *Perez* court between it and the *Rose* and *Castaneda* holdings. We suggest with deference that *Peters'* due process analysis did not bear on *Perez's* equal protection claim. Nor do we see how *Peters* could figure in today's decision.

The plurality opinion in *Peters*[5] reviewed a claim brought by a white defendant that discrimination against blacks in the selection of his grand jury violated his constitutional rights under the due process and equal protection clauses. The State in that case attacked plaintiff's standing, arguing that absent a specific showing of harm only a member of the discriminated-against mi-

---

**4.** The *Perez* court represented that the *Peters* opinion "discussed" the question of a defendant's standing "in an equal protection context and concluded that 'when a grand or petit jury has been selected on an impermissible basis, the existence of a constitutional violation does not depend on the circumstances of the person making the claim.'" *Perez,* 672 F.2d at 1385–86 (*citing Peters,* 407 U.S. at 498, 92 S.Ct. at 2166). In this specific context, we believe the *Perez* court misunderstood the meaning of the *Peters* opinion. The language quoted by *Perez* means only that the "existence" of a "violation does not depend on the circumstances of the person making the claim." In the language following the Court explained, "[i]t is a different question, however, whether petitioner is entitled to the relief he seeks on the basis of that constitutional basis." This question—that of standing to object—was not analyzed in the equal protection context, but in the due process context.

Furthermore, we do not conclude so readily as did the *Perez* court that the *Rose* opinion "at first seems to support the holding in *Peters v.*

*Kiff,"* at least not as *Peters* is interpreted by the *Perez* court. The opinion in *Rose* does state, as the *Perez* court represents, that earlier Supreme Court decisions have "recognized that a criminal defendant's right to equal protection of the laws has been denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded." Yet, the court in *Rose* cited in support of this proposition two cases, each of which upheld a black defendant's right to object to the exclusion of blacks from his grand jury. Limited as it should be to this proposition, it does not bear directly on the question before us or the court in *Perez.*

**5.** The majority in *Peters* was made up of three Justices concurring in Justice Marshall's opinion and three joining Justice White's concurrence in the judgment. Only Justice Marshall's opinion rests on the right of a white defendant not to have black jurors systematically excluded from his juries. Justice White's concurrence rests on statutory grounds not urged here.

nority could rest on the presumption that a grand jury so constituted would be prejudiced against him. The Supreme Court responded that this "argument takes too narrow a view of the kinds of harm that flow from discrimination in jury selection." 407 U.S. at 498, 92 S.Ct. at 2166. The Court noted that the exclusion of minorities from jury service "offends a number of related constitutional values." *Id.*

The Court first reviewed cases in which black defendants had presented equal protection challenges to the discriminatory exclusion of other blacks from their grand juries. In concluding its equal protection discussion, the *Peters* Court reasoned that "[b]ecause each of these three cases was amenable to decision on the *narrow basis* of an analysis of the Negro defendant's right to *equal protection,* the Court brought all three under that single analytical umbrella." *Id.* at 499, 92 S.Ct. at 2167 (emphasis added). But the defendant in *Peters* was white, and so the Court proceeded to examine the standing of a white defendant under alternative constitutional analyses, raising other recognized constitutional values. The Court explained that because of its disposition of the case, it had not been necessary to consider defendant's claim that his own rights under the Equal Protection Clause had been violated. *Id.* at 497 n. 5, 92 S.Ct. at 2165 n. 5.[6]

The Court considered other specific constitutional values and their effect on the class of defendants having standing to object. It concluded that the exclusion of a discernible class from jury service would violate the right preserved by the Sixth Amendment to "a representative cross-section of the community." *Id.* at 500, 92 S.Ct.

at 2167 (*citing* in *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970)). But the Sixth Amendment was not applicable in *Peters;* the Court instead based its decision entirely upon the due process analysis.

Starting with the premise that "[a] fair trial in a fair tribunal is a basic requirement of due process," the Court reasoned that an unconstitutionally composed grand jury violated the due process rights of all defendants. The Court relied upon an expanded view of standing in this context, because due process violations had previously been found absent a showing of actual bias. The likelihood or appearance of bias in the composition of the tribunal was sufficient to support a due process claim: "[i]llegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process." *Id.* 407 U.S. at 502, 92 S.Ct. at 2168. It was only in the context of recognized due process values that the white defendant in *Peters* was granted standing.

We do not suggest that the election of the Court in *Peters* to decide standing in that case under a due process rather than an equal protection analysis precludes a similar conclusion under equal protection. We hold only that because the Court did not reach the question of standing under the equal protection analysis in that case, we are compelled to do so today. As it bears on this question, we read *Peters* to stand for the proposition that objections to the composition of a grand jury under the equal protection and due process analyses are distinct, and that the former is likely a more "narrow basis of analysis." *Id.* at 499, 92 S.Ct. at 2167.[7]

---

6. Indeed, the dissent of the Chief Justice squarely so observes, without protest from Justice Marshall:

> While the opinion of Mr. Justice Marshall refrains from relying on the Equal Protection Clause, it concludes that if petitioner's allegations are true, he has been denied due process of law.

407 U.S. at 509, 92 S.Ct. at 2172.

7. That equal protection analysis may be more narrowly drawn was also suggested by the Supreme Court in *Bolling v. Sharpe:*

> The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process. 347 U.S. 497, 499, 74 S.Ct. 693, 694, 93 L.Ed. 884 (1954).

Against this background, we decide the question based on a more recent Supreme Court decision analyzing the question of standing to object to grand jury selection specifically under the equal protection analysis. *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). Cronn makes no complaint that the (numerical) minority of which he is a member—Anglo males—has been discriminated against in foreman selections. This is fatal to his equal protection contention. Writing in *Rose,* a case involving claimed discrimination in selection of grand jury foremen and squarely in point on this issue, the Supreme Court reiterated its earlier holding in *Castaneda,* quoting from that opinion:

That is, "in order to show that an equal protection violation has occurred in the context of grand jury [foreman] selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of *his* race or of the identifiable group to which *he* belongs." *Castaneda v. Partida,* 430 U.S., at 494, 51 L.Ed.2d 498, 97 S.Ct. 1272 [at 1280].

*Id.* at 565, 99 S.Ct. at 3005 (emphasis added). We are not free either to disregard or to expand upon the express language of the Court, writing on the precise legal point at issue today, especially where it is the Court's last word on the subject and where the Court proceeded to evaluate the evidence in the case before it exactly in accord with its statement of the proof required.

■ Logic indicates that equal protection considerations are not involved in the claim of a white male not to have females and racial minorities excluded from the judicial process as it is applied to him. The essence of an equal protection claim is that other persons similarly situated as is the claimant unfairly enjoy benefits that he does not or escape burdens to which he is subjected. This sort of a contention on Cronn's behalf might be stated, for example, in such terms as that his right to be tried by a petit jury containing members of his own ethnic group was infringed by the systematic exclusion of its members from venires. Stated or unstated, a claim that others similarly situated as he is—members of groups that are not so excluded from jury service—are unfairly favored over him in this regard is an essential component of such a claim. Equal protection claims are of their nature personal, to be stated in terms of one's own rights or those of a class in which one claims membership; logically, Cronn lacks standing to complain of unequal treatment accorded other persons or classes of which he is not a member.

So much for rigorous logic. We are aware that it has not always carried the day where standing to assert the constitutional rights of third persons is at issue. Especially in First Amendment questions involving freedom of expression, the Court has, for example, tended to examine the validity of a statute on its face—sometimes at the behest of persons to whom its unconstitutionality as applied is most unlikely. A noted commentator suggests that this tendency probably results from the threat that a broad statute may pose to free expression. C. Wright, The Law of Federal Courts 73 & n. 71 (1983) (and cases cited therein). But such challenges also have been entertained in other First Amendment contexts. *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (parochial school successfully asserted rights of students and parents against statute requiring public education exclusively). Even in the area of equal protection such departures from the rule that one may not assert the rights of another are not unknown. *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917). There a white seller seeking specific performance of a real estate sales contract with a black purchaser was heard to assert that a city ordinance barring black persons from the area concerned was unconstitutional, and this over the assertion of the ordinance as a defense by the purchaser. These are, however, exceptional instances and ones—except perhaps those regarding free expression—where the rights of the plaintiff derive from the same nexus and stand in a symbiotic relationship to those of the third party. Perhaps the rule to be deduced is that any party to a consensual and existing relationship that is regu-

lated by statute will be allowed to assert the rights of the other. *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (physician furnishing contraceptives to patients); C. Wright, *supra,* at 73.

Nothing of this sort is presented by Cronn's equal protection contention. It is vintage *jus tertii,* and we conclude that the general rule against entertaining such equal protection claims should prevail. This seems, indeed, especially so where at all times during this litigation the due process attack sanctioned by *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), lay ready to Cronn's hand but was not taken up.

Cronn advances two lesser points for reversal which merit brief discussion. The first complains of the trial court's refusal to deliver a tendered charge defining "reckless indifference" as used in a portion of the mail fraud charge on which he was convicted. The relevant portion of the charge reads as follows:

A statement or representation is "false" or "fraudulent" within the meaning of this statute if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud.

During the charge conference appellant's counsel requested that the following instruction be read to the jury to explain the meaning of making a representation with "reckless indifference" as to its truth and falsity:

In this context "reckless indifference" means that a defendant must have actually been aware of a high probability that the statements were untrue, and he must have consciously disregarded that high probability.

■ The general rule in our Circuit as regards jury instruction is:

The primary purpose of jury instructions is to define with substantial particularity the factual issues, and clearly instruct the jurors as to the principles of laws which

they are to apply in deciding the factual issues involved in the case before them. *United States v. Gilbreath,* 452 F.2d 992, 994 (5th Cir.1971). When called upon to review the adequacy of jury instructions, an appellate court must examine the instructions as a whole, rather than merely viewing the failure to give any one instruction independently. *United States v. Grote,* 632 F.2d 387 (5th Cir.1980); *United States v. Leal,* 547 F.2d 1222 (5th Cir.1977). The proper standard of review, therefore, is "whether the court's charge as a whole was a correct statement of law." *United States v. Arguelles,* 594 F.2d 109, 112 n. 3 (5th Cir.1979).

■ Certainly, the instructions given are on their face "a correct statement of law." They were taken from a standard work. We conclude that in context as given and taken as a whole they fairly present the factual issues. The terms "reckless" and "indifference," either alone or in combination, carry their normal meaning in the context and are scarcely words of art. In order to convict, the jury was required to find not only the presence of "reckless indifference" in the making of the statements in question, but that they were made with "intent to defraud." Though the definitions are faintly circular, they present the concept fairly.

■ The second point complains of the exclusion of the testimony of an expert witness, where the district court determined the proffered witness was not qualified. Trial courts exercise a wide discretion as to admission and exclusion of evidence and an unusually wide one as to the testimony of expert witnesses. *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir.1979). We conclude that it was not exceeded here.

AFFIRMED.